DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Isiah McGinnis, appeals from his conviction in the Medina County Court of Common Pleas for possession of marijuana. This Court affirms.
 I. {¶ 2} On June 17, 2004, based on a tip from a confidential informant, officers from the High Intensity Drug Trafficking Area ("HIDTA") task force began investigating the suspicious behavior of four suspects in Cuyahoga County. Officers William Letso, Jonathan Bush, John Korinek, and Christopher Ryba each observed suspicious behavior related to the occupants of a rental car from Texas. The HIDTA officers relayed their concerns regarding possible drug activity to the Ohio Highway Patrol post in Medina County. As a result, Bush was put in touch with Trooper John Grewal of the Medina Post. Bush relayed the information he had concerning the suspects and asked Trooper Grewal to effectuate a traffic stop if possible.
 {¶ 3} A short time later, Trooper Grewal observed the suspect's vehicle and used his laser speed measurement device to determine that the vehicle was exceeding the posted speed limit. Trooper Grewal also observed the vehicle following another car too closely and changing lanes in a dangerous manner. As a result, Trooper Grewal executed a traffic stop and began to question the occupants of the car. Trooper Grewal also summoned Trooper Todd Belcher to the scene as backup because there were four occupants in the car.
 {¶ 4} The troopers began questioning the car's occupants and determined that they were receiving conflicting stories. A short time later, a canine unit arrived on scene and performed a drug sniff on the vehicle. The dog alerted during its drug sniff. A second canine unit, which had not been summoned, stopped on scene. The second canine also performed a drug sniff and alerted on the vehicle.
 {¶ 5} As a result of the canine alerts, the troopers searched the trunk of the vehicle. The trunk of the vehicle contained multiple containers which held marijuana. Thereafter, Appellant and the other occupants were arrested. Appellant was charged with one count of possession of marijuana in violation of R.C.2925.11(A)/(C)(3)(f), a felony of the second degree (possession of more than 20,000 grams of marijuana).
 {¶ 6} Prior to trial, Appellant moved to suppress the drug evidence on multiple grounds. Following a hearing, the trial court denied Appellant's motion and the matter proceeded to a jury trial. At the close of the trial, the jury found Appellant guilty of possession of marijuana in violation of R.C.2929.11(A)/(C)(3)(e), a third degree felony (possession of between 5,000 and 20,000 grams of marijuana). The trial court held a sentencing hearing and sentenced Appellant to four years in prison. Appellant timely appealed his conviction, raising four assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAIN[ED] IN VIOLATION OF THEFOURTH AMENDMENT, WHERE (1) THE TRAFFIC STOP WAS NOT BASED UPON REASONABLE SUSPICION OR PROBABLE CAUSE; (2) PROBABLE CAUSE WAS LACKING TO SEIZE THE MONEY FELT IN APPELLANT'S POCKET DURING THE BRIEF PAT-DOWN SEARCH BY THE TROOPER; (3) REASONABLE SUSPICION OR PROBABLE CAUSE WAS LACKING TO JUSTIFY THE CONTINUED DETENTION OF APPELLANT AND HIS CO-DEFENDANT AT THE SCENE OF THE TRAFFIC STOP UNTIL A DRUG-SNIFFING CANINE COULD ARRIVE; AND (4) THE CANINE HANDLERS DID NOT TESTIFY AT [THE] SUPPRESSION HEARING CONCERNING EITHER THE ALLEGED ALERT BY THEIR CANINES OR THE TRAINING AND ALLEGED RELIABILITY OF THEIR CANINES."
 {¶ 7} In his first assignment of error, Appellant asserts that the trial court erred in denying his motion to suppress. This Court disagrees.
 {¶ 8} A trial court's ruling on a motion to suppress evidence presents to the reviewing court a mixed question of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. This Court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v.Searls (1997), 118 Ohio App.3d 739, 741. The application of the law to those facts, however, will be reviewed de novo. Id.
Initial Stop
 {¶ 9} A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. Whren v. United States (1996),517 U.S. 806, 809-810. However, an investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity. Maumee v. Weisner (1999), 87 Ohio St.3d 295, 299, citing Terry v. Ohio (1968), 392 U.S. 1, 22. "To justify a particular intrusion, the officer must demonstrate `specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Weisner,87 Ohio St.3d at 299, quoting Terry, 392 U.S. at 21. Evaluating these facts and inferences requires the court to consider the totality of the surrounding circumstances. State v. Freeman
(1980), 64 Ohio St.2d 291, paragraph one of the syllabus. Therefore, "if the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." State v. Hoder, 9th Dist. No. 03CA0042, 2004-Ohio-3083, at ¶ 8, quoting State v.Shook (June 15, 1994), 9th Dist. No. 93CA005716, at *4.
 {¶ 10} Trooper Grewal gave undisputed testimony that the driver of the car had committed three traffic violations (speeding, following too closely, and improper lane change). While Appellant argues that Trooper Grewal had an ulterior motive for the traffic stop, such a fact is irrelevant to a determination of whether reasonable suspicion existed to initiate the stop. Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11.
"[T]he stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id.
Thus, the trial court's finding that Trooper Grewal had reasonable suspicion to initiate a traffic stop is supported by competent and credible evidence. Appellant's challenge to the initial stop, therefore, lacks merit.
Pat Down
 {¶ 11} Appellant argues that the officers violated hisFourth Amendment rights when they removed approximately $3,100 from his pocket when he was patted down. Specifically, Appellant asserts that the money was not identifiable as contraband when it was felt on his person. This Court finds that Appellant's assertion lacks merit.
 {¶ 12} In Terry, 392 U.S. at 29, the United States Supreme Court stated that a police officer may conduct a limited search of a person for weapons in order to protect himself or other people in the immediate vicinity. The Ohio Supreme Court, in reliance on Terry, has held that "where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." State v. Jordan, 104 Ohio St.3d 21,2004-Ohio-6085, at ¶ 59, quoting State v. Bobo (1988),37 Ohio St.3d 177, paragraph two of the syllabus. In Minnesota v.Dickerson (1993), 508 U.S. 366, the U.S. Supreme Court extended the rationale of Terry to include contraband.
"If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." Id. at 375-76.
The incriminating nature of the object must be immediately apparent in order to justify its seizure. Id. at 375.
 {¶ 13} In the instant appeal, Appellant has not challenged the legitimacy of the Terry search. Instead, Appellant argues that Trooper Grewal did not have probable cause to believe that the object, the $3,100, was contraband prior to its seizure. We disagree.
 {¶ 14} Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates (1983), 462 U.S. 213,238. At the suppression hearing, Trooper Grewal testified that officers from HIDTA had contacted him regarding possible drug activity that they had observed. It was further established that the suspects were driving a car with Texas license plates. Texas was identified as a source state for illegal drugs, particularly marijuana. In addition, Trooper Grewal testified that as he attempted to pull the vehicle over, several of the passengers made furtive movements which appeared suspicious.
 {¶ 15} Further, prior to his pat down of Appellant, Trooper Grewal learned that the stories given by each of the passengers in the car were conflicting. During his pat down of Appellant, Trooper Grewal felt what he believed was a large amount of cash. At that time, Trooper Grewal had been informed by the occupants that their trip to Ohio was very short, having been in Ohio for less than 48 hours.
 {¶ 16} Based upon the facts above, we cannot say that the trial court erred in determining that Trooper Grewal had probable cause to seize the money in Appellant's pocket. As noted above, Trooper Grewal indicated that there were multiple factors that led him to believe that the car contained illegal drugs. He testified that large sums of money often accompanied illegal drugs. Upon patting down Appellant, Trooper Grewal identified, through Appellant's clothing, a large sum of money. Given that the trip was to last only a few days, we find it reasonable for Trooper Grewal to have immediately believed that the nearly $3,100 was contraband. "[C]arrying a large sum of cash is strong evidence of some relationship with illegal drugs." United Statesv. $67,220 (C.A.6, 1992), 957 F.2d 280, 285, citing UnitedStates v. $215,300 (C.A.9, 1989), 882 F.2d 417, 419. Appellant's challenge to the seizure of the $3,100 lacks merit.
Continued Detention
 {¶ 17} Appellant asserts that even if the initial traffic stop was justified, his continued detention was unreasonable. We disagree.
 {¶ 18} An investigative stop may "last no longer than is necessary to effectuate the purpose of the stop." Florida v.Royer (1983), 460 U.S. 491, 500. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." State v. Carlson
(1995), 102 Ohio App.3d 585, 598. This Court has previously held that a stop as long as twenty-six minutes was reasonable under the totality of the circumstances involved. State v. Ramirez,
9th Dist. No. 04CA0024-M, 2004-Ohio-6541, at ¶ 12. Further, an officer may expand the scope of the stop and may continue the detention of an individual if the officer discovers reasonably articulable facts that give rise to a suspicion of criminal activity. State v. Robinette (1997), 80 Ohio St.3d 234, 241.
 {¶ 19} In the instant matter, Appellant was detained for a total of thirty-nine minutes prior to the canine units arriving to conduct a drug sniff. Appellant asserts that such a delay, under the facts presented, was unreasonable. This Court disagrees.
 {¶ 20} In his testimony, Trooper Grewal stated that a routine traffic stop lasts for approximately fifteen to twenty-five minutes. This Court finds that under the circumstance presented, Trooper Grewal's continued detention of Appellant was not unreasonable.
 {¶ 21} We begin by noting that Trooper Grewal established through his testimony that this was not a routine traffic stop. Upon stopping the vehicle, Trooper Grewal realized that the car was a rental. When the rental form was provided to the officer, Arlo Ward, the driver, was not listed as an eligible driver. Thus, in addition to his routine tasks, Trooper Grewal had to verify that the vehicle was not stolen. Accordingly, he had to contact the registered renter of the vehicle to verify that Ward had permission to drive the vehicle. Further, upon initial questioning, Appellant indicated that he had a gun, which was located in the trunk. Appellant provided the officers with his Texas permit for the gun. Thus, the officers also had the additional task of verifying that Appellant was not improperly transporting a firearm.
 {¶ 22} This Court also finds that Trooper Grewal presented testimony that established reasonably articulable facts that gave rise to a suspicion of criminal behavior. As noted above, Trooper Grewal had been informed of HIDTA's activities prior to stopping the car. In addition, Trooper Grewal observed furtive movements when he executed the stop and received conflicting stories from the passengers in the car. Trooper Grewal also found more than $3,000 in cash on Appellant's person. Reviewing the totality of the circumstances known to Trooper Grewal, we find that sufficient facts were presented to justify the continued detention of Appellant.
 {¶ 23} Appellant's detention, by Trooper Grewal's testimony, was roughly 14 minutes longer than an average traffic stop. Canine units were summoned in a diligent manner, and the facts known to Trooper Grewal justified the detention. Accordingly, this Court cannot say that the trial court erred in denying Appellant's motion to suppress based on his continued detention.Ramirez, at ¶ 12.
Canine Sniff
 {¶ 24} In the final section of his first assignment of error, Appellant alleges that the State failed to prove that the canines which alerted on the car were reliable. During the suppression hearing, Appellant did not challenge the reliability of the canines. Further, when he proposed findings of fact and conclusions of law following the hearing, Appellant did not challenge the reliability of the dogs.
 {¶ 25} Appellant has provided no authority and this Court has found no authority for the proposition that the State has the burden to prove the reliability of a canine when no challenge to the canine's reliability has been made. Further, as Appellant did not challenge the canine's reliability, he may not do so for the first time on appeal.[1] State v. Powers (1995),106 Ohio App.3d 696, 699.
 {¶ 26} "[O]nce a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." Carlson,102 Ohio App.3d at 600, citing Shook, supra, at *10. The officers, therefore, acted within their authority when searching the vehicle's trunk following the alert by the canine. Accordingly, each of Appellant's arguments surrounding his motion to suppress lack merit. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED APPELLANT'S SIXTH AMENDMENT CONFRONTATION CLAUSE RIGHTS BY ALLOWING LAW ENFORCEMENT OFFICERS TO TESTIFY CONCERNING STATEMENTS MADE BY BOTH A CONFIDENTIAL INFORMANT AND A CO-DEFENDANT, WHERE IT WAS NOT ESTABLISHED THAT THOSE WITNESSES WERE UNAVAILABLE TO TESTIFY FOR THE STATE AT TRIAL AND WHERE APPELLANT DID NOT HAVE A PRIOR OPPORTUNITY TO CROSS-EXAMINE THOSE WITNESSES."
 {¶ 27} In his second assignment of error, Appellant contends that the trial court violated his right of confrontation when it permitted the introduction of hearsay testimony. This Court finds that Appellant has not preserved his argument on appeal.
 {¶ 28} Evid.R. 103(A)(1) provides as follows:
"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context[.]" (Emphasis added.)
In the instant appeal, Appellant, when pertinent questions were asked, simply stated, "Objection." Appellant did not mention or raise the Confrontation Clause at any point in the proceedings below.
 {¶ 29} Accordingly, the evidence does not reflect that Appellant properly preserved an objection to the admission of such evidence on constitutional grounds. The failure to raise a constitutional issue at the trial level waives the right to advance a constitutional argument at the appellate level. See Evid.R. 103(A)(1); State v. 1981 Dodge Ram Van (1988),36 Ohio St.3d 168, 170; State v. Awan (1986), 22 Ohio St.3d 120, syllabus. As Appellant has not asserted that the trial court committed plain error, we decline to undertake such a review. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THERE WAS INSUFFICENT EVIDENCE TO SUPPORT THE JURY'S GUILTY VERDICT, AND APPELLANT'S POSSESSION OF DRUGS (MARIJUANA) CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 30} In his third assignment of error, Appellant asserts that the State produced insufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence. This Court disagrees.
 {¶ 31} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Appellant's assertion that his conviction was against the manifest weight of the evidence first as it is dispositive of Appellant's claim of insufficiency.
 {¶ 32} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 33} Appellant was convicted of possession of marijuana in violation of R.C. 2925.11(A) which provides as follows: "No person shall knowingly obtain, possess, or use a controlled substance." Additionally, R.C. 2901.22(B) defines knowingly as follows:
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
Appellant contends that the State failed to prove that the drugs belonged to him, and therefore failed to prove the essential elements of possession of a controlled substance.
 {¶ 34} Possession however, need not be actual; it may be constructive. State v. Butler (1989), 42 Ohio St.3d 174, 175. Constructive possession will be found when a person knowingly exercises dominion or control over an item, even without physically possessing it. State v. Hankerson (1982),70 Ohio St.2d 87, syllabus. Further, two persons may constructively possess the same thing. State v. Galindo (July 9, 1999), 6th Dist. No. L-98-1242, at *4. While mere presence in the vicinity of the item is insufficient to justify possession, drugs that are found in plain view and are in close proximity to a defendant can establish constructive possession of those drugs. State v.Pruitt (1984), 18 Ohio App.3d 50, 58. Circumstantial evidence alone is sufficient to support the element of constructive possession. State v. Jenks (1991), 61 Ohio St.3d 259, 272-273. "Circumstantial evidence, furthermore, permits legitimate inferences." Waterville v. Lombardo, 6th Dist. No. L-02-1160,2004-Ohio-475, at ¶ 18.
 {¶ 35} We begin by noting that Appellant has not challenged that the substance recovered from the car was in fact marijuana. Rather, his challenge is limited to whether the evidence supports a finding that he knowingly possessed the marijuana. We find that the evidence presented supports Appellant's conviction.
 {¶ 36} HIDTA members Bush, Letso and Korinek testified regarding their investigation of Appellant and the other passengers in the vehicle. These officers testified as follows. Appellant and Ward loaded objects into the trunk of the vehicle at a motel near Cleveland. While loading the objects, the two men appeared to constantly scan the parking lot to determine whether or not they were being observed. Four individuals, Appellant, Ward, and two women, entered the vehicle and proceeded to a residence where they met a fifth individual, Anthony Graham. All five left the residence in Graham's vehicle and returned a short time later. Upon returning, Appellant and Ward removed objects from Graham's vehicle and loaded them into the rental vehicle. Ward loaded a dark object into the trunk and Appellant loaded a white shopping bag. Ward then stuffed the dark object into a duffel bag in the trunk of the rental vehicle. Appellant and Graham appeared to scan the area while Ward manipulated items in the trunk.
 {¶ 37} The HIDTA officers continued their testimony as follows. Bush contacted the Medina post of the Ohio Highway Patrol to inform them of the suspicious activity the HIDTA members had observed. Bush requested information regarding which trooper would be in place to execute a traffic stop on the suspect's vehicle. Troopers at the post informed Bush that Trooper Grewal would be in the best position to execute such a stop. Bush then contacted Trooper Grewal and requested that he stop the vehicle if possible.
 {¶ 38} Trooper Grewal testified as follows. Upon receiving the information from Bush, Trooper Grewal waited for the suspect's vehicle to pass him on the interstate. When the vehicle passed, Trooper Grewal clocked its speed at seventy, sixty-eight, and sixty-eight using laser technology. The posted speed limit for that section of the interstate is sixty. Shortly after the vehicle passed, Trooper Grewal observed the vehicle nearly hit a vehicle and abruptly change lanes in an unsafe manner. As a result, Trooper Grewal pulled onto the highway from the median when it was safe for him to do so and executed the traffic stop.
 {¶ 39} Trooper Grewal continued his testimony as follows. On scene, Trooper Grewal was joined by Trooper Belcher. Upon questioning the car's occupants about their trip to Ohio, the troopers received conflicting stories about when the occupants left Texas. As a result, the troopers awaited a canine team to perform a drug sniff on the car. Prior to the drug sniff being performed, Trooper Grewal patted down Appellant and found more than $3,000 in cash on his person. Shortly thereafter, the canine team arrived and performed a drug sniff on the car. A second canine team stopped at the scene as well. The second team had not been summoned, but merely passed the area and stopped to render assistance. Both canines alerted on the vehicle.
 {¶ 40} Trooper Belcher testified as follows. When the troopers searched the trunk, a "strong odor" of marijuana presented immediately upon opening the trunk. The troopers then removed a cooler, a duffle bag, and several white plastic bags. The cooler and duffel bag contained marijuana. One of the white plastic bags contained marijuana and the other contained white funnels and plastic gloves. Trooper Belcher concluded his testimony by restating the conversation he had with Ward. When asked who the marijuana belonged to, Ward responded, "I'd rather not say." Trooper Belcher then stated, "Well, then everyone's going to jail." Ward then responded, "No, let the girls go. They didn't know anything about it. It was mine and my guy's."
 {¶ 41} The State also presented witnesses that established that the weight of the marijuana exceeded 20,000 grams when it was initially weighed. Further, the State presented evidence that the canines involved in the drug sniff had been properly trained and had alerted on the vehicle in question.
 {¶ 42} In defense, Appellant presented evidence that the State's weight measurement was inaccurate and that the marijuana actually weighed less than 20,000 grams. In addition, Appellant presented evidence that it was not unusual for a person on a long trip to carry large sums of cash.
 {¶ 43} Upon review of the evidence, this Court cannot say that the jury lost its way in convicting Appellant of possession of marijuana. We find the following list of facts pertinent to our determination that Appellant's conviction is not against the manifest weight of the evidence. Trooper Belcher indicated that a strong odor of marijuana was present immediately upon the trunk being opened. Multiple HIDTA officers testified that Appellant had placed items in that trunk earlier the same day. Those same HIDTA officers testified that Appellant placed a white plastic bag in the trunk. Two white plastic bags were retrieved from the trunk; one contained marijuana. Appellant and Ward gave conflicting stories to the arresting officer about their trip to Ohio. Finally, upon questioning, Ward asked that the two female passengers be released, stating that they did not know anything about the drugs. Ward then indicated that the drugs were his and his "guy's." Ward did not state that Appellant was not involved; thus creating the strong inference that Ward's "guy" was in fact Appellant. Accordingly, we cannot say that the jury lost its way in finding that Appellant knowingly possessed marijuana.
 {¶ 44} Having disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. Roberts, supra, at *2. Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO MORE THAN THE MINIMUM PRISON TERM, WHERE HE HAD NO PRIOR CRIMINAL RECORD AND WHERE THE SENTENCING GUIDELINES MITIGATED AGAINST SUCH A PRISON SENTENCE."
 {¶ 45} In his final assignment of error, Appellant asserts that the trial court's sentence was not supported by the facts in the record. This Court disagrees.
 {¶ 46} On February 27, 2006, the Ohio Supreme Court issued two decisions which impact Appellant's arguments on appeal. InState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Court found that Ohio's sentencing structure was unconstitutional to the extent that it required judicial fact-finding. Id. at paragraphs one through seven of the syllabus. In constructing a remedy, the Court excised the portions of the statute it found to offend the Sixth Amendment and thereby granted full discretion to trial court judges to sentence defendants within the bounds prescribed by statute. See Id.; State v. Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, at ¶ 19.
 {¶ 47} We note that on appeal Appellant has not challenged the constitutionality of the imposition of his sentence. Accordingly, we decline to sua sponte remand on grounds not argued by Appellant. Id. at ¶ 24.
 {¶ 48} Foster, however, did alter this Court's standard of review which was previously a clear and convincing error standard. State v. Windham, 9th Dist. No. 05CA0033,2006-Ohio-1544, at ¶ 11. Accordingly, this Court reviews Appellant's sentence utilizing an abuse of discretion standard. Id. at ¶ 12. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 49} We begin by noting that in its journal entry, the trial court specifically stated that it had considered the purposes and principles of sentencing under R.C. 2929.11 and R.C.2929.12. The Foster Court noted that "there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to `consider' the statutory factors." Foster at ¶ 42. Therefore, post-Foster, trial courts are still required to consider the general guidance factors in their sentencing decisions.
 {¶ 50} R.C. 2929.11 provides in pertinent part as follows:
"(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
"(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
In addition, R.C. 2925.11(C)(3)(e) provides as follows:
"If the amount of the drug involved equals or exceeds five thousand grams but is less than twenty thousand grams, possession of marihuana is a felony of the third degree, and there is a presumption that a prison term shall be imposed for the offense."
 {¶ 51} As Appellant was convicted under the above provision, the trial court was permitted to sentence Appellant anywhere with the one to five year range for a third degree felony. R.C.2929.14(A)(3). At Appellant's sentencing hearing, the trial court stated as follows:
"With regard to the principles and purposes of Senate Bill 2, there's a presumption of prison because of the amount of marijuana involved. The Court finds in this particular case, due to the amount of marijuana — and it was an enormous amount of marijuana — the minimum sentence in this case, which would be a one-year prison sentence, would demean the seriousness of the offense.
"Based just on the numbers, the Court is going to make the determination that a four-year prison sentence is appropriate[.]" The trial court also noted that "I'm familiar with the facts of the case because it was tried to a jury in my courtroom."
 {¶ 52} Based upon the above, we cannot say that the trial court acted in an unreasonable or arbitrary manner. Appellant traveled from Texas and obtained drugs in Ohio. By the testimony of Appellant's own expert, the amount of marijuana easily exceeded 15,000 grams. Thus, we find no abuse of discretion in the trial court's decision to elevate Appellant's sentence beyond the one-year minimum. Appellant's fourth assignment of error is overruled.
 III. {¶ 53} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Boyle, J., concurs.
[1] We note that the record reflects that the canine's extensive training was introduced at trial.