[Cite as *State v. Davis*, 2015-Ohio-4218.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

JOHN R. DAVIS

    Appellant

C.A. No.    14CA010639

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    11CR082528

DECISION AND JOURNAL ENTRY

Dated: October 13, 2015

SCHAFER, Judge.

{¶1} Defendant-Appellant, John Davis, appeals the judgment of the Lorain County Court of Common Pleas convicting him on trafficking in drugs, possession of drugs, and possessing criminal tools and sentencing him to a total prison term of eight years. For the reasons that follow, we affirm the trial court's judgment.

I.

{¶2} Davis was indicted on one count of trafficking in drugs in violation of R.C. 2925.03(A)(2), a felony of the second degree, one count of possession of drugs in violation of R.C. 2925.11(A), a felony of the second degree, and one count of possessing criminal tools in violation of R.C. 2923. 24(A), a felony of the fifth degree. These charges arose from an incident in which law enforcement officials conducted an investigatory stop of Davis's sport utility vehicle while it was traveling eastbound on Interstate 80. Ohio State Highway Patrol Sergeant Neil Laughlin indicated that he pulled Davis's vehicle over to the right side of the highway

because he observed the vehicle cross the white marked lane that separates the far right lane from the shoulder.

{¶3} Sergeant Laughlin initiated the traffic stop at 9:57 a.m. and he made contact with Davis through the front passenger window approximately 45 seconds later, at which time he asked for Davis's license and vehicle registration. Sergeant Laughlin observed four large U-Haul boxes in the rear cargo section of the vehicle and a small tote bag. Sergeant McLaughlin asked Davis where he was traveling to which Davis initially responded that he was driving from Colorado to Pennsylvania to visit his mother and drop off a chandelier, which he said was professionally packed in the U-Haul boxes. Shortly afterwards, Davis said that he was going to Pennsylvania to visit his daughter, who he said was pregnant with her first child. During the course of this interaction, Sergeant Laughlin determined that Davis was nervous based on his avoidance of eye contact, shaky hands, and cracking voice.

{¶4} Sergeant Laughlin asked whether Davis would allow him to search the vehicle, but Davis declined. At that time, Sergeant Laughlin decided that he was going to dispatch for a canine sniff test. However, before calling in his request, Sergeant Laughlin saw that Trooper Michael Trader of the canine unit arrived. At 10:01 a.m., Sergeant Laughlin told Davis that he was going to run a license check and he asked Davis to get out of the vehicle. Davis complied and he allowed Sergeant Laughlin to perform a pat-down search for weapons. After the pat-down search, Davis was placed in the backseat of Sergeant Laughlin's cruiser. Sergeant Laughlin subsequently explained the circumstances of the stop to Trooper Trader before getting into the front seat of the cruiser and dispatching Davis's information for the license check.

{¶5} At 10:03 a.m., Trooper Trader performed the canine sniff test with his canine, Argo. The dog was first led to the left rear of Davis's vehicle and then traveled

counterclockwise around the vehicle. When Argo passed the passenger side rear door of the vehicle, his head snapped to the left. Argo then squared his body to the vehicle and scratched at the passenger side front door of the vehicle. Trooper Trader determined that Argo's actions reflected an alert to the presence of drugs. The canine sniff test lasted approximately five to seven seconds and at the time of the alert, the check of Davis's license was not complete and Sergeant Laughlin had not yet issued a traffic citation. Between the initiation of the traffic stop and Argo's alert, approximately six minutes had elapsed.

{¶6} Trooper Trader informed Sergeant McLaughlin of the positive alert and they then conducted a probable cause search of Davis's vehicle. The U-Haul boxes were sealed so tightly that the officers had to use a serrated knife to open them. Once they were opened, the officers discovered eight blocks of marijuana inside the boxes that weighed a total of approximately180 pounds.

{¶7} Davis filed a motion to suppress the evidence obtained from the search of his vehicle after the investigatory stop. The trial court conducted a hearing on the motion to suppress at which Sergeant Laughlin, Trooper Trader, and two experts testified. Davis's expert, Andre Jimenez, testified that after reviewing the video recording of the traffic stop, he was unable to see Argo alert during the canine sniff test. The State's expert, Daniel Bowman, testified that the canine sniff test was performed in accordance with the training that Trooper Trader and Argo received. Mr. Bowman also reviewed the video recording of the stop and he testified that Argo's actions indicated an alert for drugs. During the course of the hearing, Davis attempted to offer evidence of an opinion from another judge of the Lorain County Court of Common Pleas concerning the reliability of Argo, but the trial court refused to take judicial notice of the opinion.

{¶8} The trial court subsequently denied Davis's motion to suppress by judgment entry dated November 9, 2012. In doing so, the trial court found that Sergeant Laughlin had the requisite reasonable suspicion to stop Davis's vehicle since he observed a marked lanes violation. It also found that the detention of Davis "was no longer than necessary to effectuate the purpose of the stop" since Sergeant Laughlin "testified that at the time Trooper Trader received a positive reaction from canine Agro [sic], Sgt. Laughlin was still awaiting response from dispatch as to the status of [Davis]'s license." The trial court further found that "the State has presented sufficient evidence of Trooper Trader and Argo's reliability and credibility for narcotics [detection] in vehicles. [Davis] did not present sufficient evidence to rebut such a finding." Finally, the trial court concluded that there was probable cause for the warrantless search of Davis's vehicle:

> Trooper Trader testified that when Argo passed the right rear door, his head snapped to the left, indicating he was in odor. Then Argo squared off while sniffing the side of the vehicle and came to a 90 degree angle with the vehicle which is a change that he shows once he is in odor. Finally, Argo scratched at the front passenger door near the seam, which is his final trained response to indicate the odor of narcotics. [Davis]'s expert, Mr. Jimenez, testified that the video shows the events so quickly that he could not give an expert opinion on whether the dog alerted or not. This Court reviewed the dash cam video several times based upon its lack of clarity and how quickly the events transpired. After review, this Court finds that it is observable that Argo changes his position relative to the vehicle near the seam of the passenger side rear and front doors. Argo also moves in a manner whereby he is on his rear paws facing the side of the vehicle. At this point, his front paws are not able to be viewed because of the angle of the camera. These observations, coupled with the testimony of Trooper Trader who was present to observe Argo's reaction, support a finding that Argo alerted to narcotics being present in the vehicle. Based upon this alert, the officers had probable cause to search the vehicle.

{¶9} Davis eventually pled no contest to the charges and the trial court sentenced him to a total prison term of eight years. He filed this timely appeal, presenting a single assignment of error for our review.

II.

**Assignment of Error**

**The trial court erred when it denied the Defendant-Appellant's motion to suppress.**

{¶10} In his sole assignment of error, Davis contends that the trial court erred by denying his motion to suppress. He specifically challenges the trial court's denial of his motion to suppress on three grounds. First, he argues that there was not reasonable suspicion for Sergeant Laughlin to effectuate the traffic stop of his vehicle for a marked lanes violation. Second, Davis asserts that the duration of the investigatory stop was improperly prolonged for Trooper Trader to conduct the canine sniff test. And, third, Davis argues that there was not probable cause to conduct the search of his vehicle. We disagree on all three points.

A. Standard of Review for Motions to Suppress

{¶11} A trial court's ruling on a motion to suppress "presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. In considering this mixed question, we view the trial court as serving as the tier of fact and primary judge of witness credibility and the weight of the evidence presented. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, we must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. However, we afford no such deference when considering the trial court's application of the law to the facts. Rather, we apply de novo review on this point. *Burnside* at ¶ 8; *accord State v. Clayton*, 9th Dist. Summit No. 27290, 2015-Ohio-663, ¶ 7 ("[T]his Court reviews the trial court's findings for competent, credible evidence and considers the legal conclusions de novo.").

B.  Reasonable Suspicion for Traffic Stop

{¶12}  Both the United States Constitution and the Ohio Constitution protect individuals from unreasonable searches and seizures.  *State v. Bowens*, 9th Dist. Lorain No. 13CA010417, 2014-Ohio-4263, ¶ 10.  "With respect to the Fourth Amendment, the United States Supreme Court has repeatedly stated that 'searches conducted outside the judicial process, without prior approval by [a] judge or magistrate, are per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'"  *Id*., quoting *California v. Acevedo*, 500 U.S. 565, 580 (1991).  "One well-delineated exception to the warrant requirement occurs where police officers perform an investigatory stop based on their reasonable suspicion that criminal activity is afoot."  *State v. Jackson*, 9th Dist. Lorain No. 14A010555, 2015-Ohio-2473, ¶ 13, citing *Terry v. Ohio*, 392 U.S. 1, 212 (1968), and *State v. Jones*, 9th Dist. Summit No. 20810, 2002 WL 389055, * 2 (Mar. 13, 2002).  When a police officer observes a traffic violation, he has reasonable suspicion to effectuate an investigatory stop.  *Id*. at ¶ 15, citing *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), syllabus and *State v. Johnson*, 9th Dist. Medina No. 03CA0127-M, 2004-Ohio-3409, ¶ 11.  While the investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop[,]" *Florida v. Royer*, 460 U.S. 491, 500 (1983), its duration may be extended "when additional facts are encountered to give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop[,]" *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 15.

{¶13}  Here, the State contends that Sergeant Laughlin had reasonable suspicion to effectuate the traffic stop since he observed Davis's vehicle cross over the marked lane separating the far right lane from the shoulder in violation of R.C. 4511.33.  The State further argues that there was reasonable suspicion for the traffic stop because Davis had a rigid posture,

two hands on the wheel, and was driving a couple of miles per hours under the speed limit. Although the State's factors for reasonable suspicion are thin, we cannot ignore Sergeant Laughlin's testimony that he observed Davis commit a traffic violation by crossing over the right marked lane into the shoulder on "three or four" different occasions. This testimony provided competent credible evidence to support the trial court's determination that Sergeant Laughlin had the necessary reasonable suspicion of a R.C. 4511.33 violation to effectuate a traffic stop of Davis's vehicle.

{¶14} Davis counters that Sergeant Laughlin's testimony is incredible and unsupported by the video recording of the traffic stop, but we must defer to the trial court's determination that Sergeant Laughlin's testimony was credible. *See State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 11 ("[The officer]'s testimony that he witnessed [the defendant] commit several traffic violations was sufficient to establish that [the officer] engaged in a constitutionally valid stop of [the defendant]'s car."). Moreover, the lack of visual evidence confirming Sergeant Laughlin's testimony is immaterial in this matter. Sergeant Laughlin testified that he observed the traffic violations before turning on the recording device for his dashcam. This testimony accounts for the lack of a discernible traffic violation in the video recording. *See id*. (noting that the officer's dashcam did not capture the observed traffic violations since "the recording device linked to his cruiser's dashcam is such that it only creates a recording when the cruiser's overhead lights are activated"). As a result, we conclude that the trial court did not err in determining that there was reasonable suspicion to support the investigatory stop in this matter.

### C. Duration of the Investigatory Stop

{¶15} "A seizure that is justified solely by the interest in issuing a [traffic citation] to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete

that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). The time reasonably required to issue a traffic citation "includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." *Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, at ¶ 12. Accordingly, "[a] traffic stop is not unconstitutionally prolonged when permissible background checks have been diligently undertaken and not yet completed at the time a drug dog alerts on a vehicle." *Id*. at paragraph one of the syllabus.

{¶16} Here, Sergeant Laughlin effectuated the traffic stop at 9:57 a.m. Davis handed over his license shortly thereafter and before Laughlin could return to his cruiser, Trooper Trader arrived with Argo. For officer safety, Davis was asked to exit his vehicle, searched for weapons, and placed in the backseat of Sergeant Laughlin's cruiser. When Sergeant Laughlin got into the front seat of the cruiser, he radioed Davis's information so that the necessary checks could be completed. At 10:03 a.m. the canine sniff test was completed and Argo alerted to the presence of drugs. At that time, the background check had not been completed and Sergeant Laughlin had not yet issued a traffic citation to Davis.

{¶17} This constitutes competent credible evidence to support the trial court's determination that Sergeant Laughlin did not impermissibly extend the duration of the traffic stop. At the time of the canine sniff test, the license check for Davis was not complete and no traffic citation had been issued. Additionally, there is no evidence indicating that the police were not diligent and timely in the exercise of their duties. As a result, we cannot reverse the trial court's denial of the motion to suppress on the basis that the duration of the traffic stop was unconstitutionally extended. *See Batchili* at ¶ 14 (concluding that there "simply [was] no evidence to suggest that [the defendant]'s detention for the traffic violation was of sufficient length to make it constitutionally dubious" where the drug dog alerted approximately nine

minutes into stop and neither the background nor the traffic citation had been completed yet); *Jackson*, 2015-Ohio-2473, at ¶ 30 (determining that traffic stop of eight minutes was not impermissibly extended for canine sniff test that occurred after the defendant was removed from the vehicle, searched for weapons, and placed in back of police cruiser).

### D. Probable Cause for Search

**{¶18}** Davis identifies two bases for his argument that there was insufficient probable cause to support the search of his vehicle. First, he claims that Argo never alerted to the presence of drugs. And, second, Davis contends that he was impermissibly precluded from challenging the reliability of Argo since the trial court prevented him from offering evidence of another judge's ruling against Argo's reliability. We reject both of these propositions in turn.

### 1. Argo's Alert

**{¶19}** "If an accredited drug dog alerts to the presence of drugs in a vehicle, the officer has probable cause to search the entire vehicle." *State v. Nocon*, 9th Dist. Lorain No. 10CA009921, 2012-Ohio-395, ¶ 12. Here, the trial court found that Argo is an accredited drug dog. It also found that based on its review of the traffic stop recording and the testimony in the record that Argo alerted to the presence of drugs in Davis's vehicle. Both of these findings are supported by competent credible evidence and we cannot disturb them on appeal.

**{¶20}** Trooper Trader testified that he, as well as Argo, underwent 200 hours of drug detection training in 2010 through Gold Shield K9s. After this initial training, Trooper Trader and Argo received a certificate from the Ohio Peace Officer Training Academy. Since this initial accreditation, Trooper Trader and Argo have undergone 16 hours of ongoing training each month. This testimony was further reflected in the training records that were entered into evidence. Moreover, Mr. Jimenez, the defense expert, testified that he had no concerns with

Argo's accreditation. Consequently, the record supports the trial court's determination that Argo was an accredited drug dog.

{¶21} As to whether Argo alerted in this matter, Trooper Trader testified that Argo's behavior during the sniff test reflected an alert. He specifically identified Argo's action of snapping his head towards Davis's vehicle, squaring his body towards the vehicle, and scratching the front passenger side door as trained responses that Argo performs when he smells drugs. The video recording of the traffic stop confirms that Argo did indeed square his body to the vehicle when he passed the passenger side. It does not, however, show Argo scratching at the door since the view from Sergeant Laughlin's dashcam is obstructed. Nevertheless, the recording shows Argo lift his front paws when he is next to the passenger side, which is consistent with scratching, and Mr. Bowman, the State's expert testified that he heard a scratching sound on the recording. Mr. Bowman further testified that based on his review of the video recording, Trooper Trader performed the canine sniff test in accordance with his training and that Argo's behavior during the test was consistent with an indication for the presence of drugs. Based on this competent credible evidence, we cannot determine that the trial court erred in finding that Argo alerted to the presence of drugs during the canine sniff test. *See State v. French*, 104 Ohio App.3d 740, 749 (12th Dist.1995) (holding that there was competent credible evidence to support trial court's finding that drug dog alerted when two police officers testified to alert and "what is reflected on the videotape is how the dog behaved with respect to his alert")

{¶22} In arguing that the record does not support the trial court's finding that Argo alerted, Davis emphasizes Mr. Jimenez's expert testimony. Mr. Jimenez relevantly testified that "[t]here is no chance for me, reviewing the video, to see a distinct change in the dog's behavior so that I can give an expert opinion on whether the dog alerted or not." This testimony does not

unequivocally indicate that Argo failed to alert and rather it merely reflects Mr. Jimenez's inability to offer an expert opinion on the issue. The trial court weighed this testimony against Trooper Trader's and Mr. Bowman's testimonies and gave greater weight to the State's evidence. We are unable to second-guess the trial court's weighing of the evidence in this matter based on the record before us.

### 2. Evidence of Argo's Reliability

{¶23} During the suppression hearing, Davis asked that the trial court take judicial notice of a judgment from another judge of the Lorain County Court of Common Pleas regarding Argo's reliability. The trial court, however, denied Davis's request and no evidence regarding this judgment was accepted into the record. On appeal, Davis does not argue that the trial court should have taken judicial notice of the judgment. Rather, he contends that the failure of the trial court to receive evidence regarding the judgment violated his due process rights. But, "[t]he failure to raise a constitutional issue at the trial level [forfeits] the right to advance a constitutional argument at the appellate level." *State v. McGinnis*, 9th Dist. Medina No. 05CA0061-M, 2006-Ohio-2281, ¶ 29, citing *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus. "While a defendant who forfeits such an argument still may argue plain error on appeal, this [C]ourt will not sua sponte undertake a plain-error analysis if a defendant fails to do so." *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 41, citing *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11. Although Davis preserved a plain error argument, he has not made one in this matter. Consequently, "we will not create a plain-error argument on his behalf [and] we must conclude that [his argument] lacks merit." *Id*. at ¶ 42.

{¶24} There is competent credible evidence in the record supporting the trial court's finding that Argo alerted to the presence of drugs in Davis's vehicle. Additionally, we cannot

determine that the trial court erred by preventing Davis from offering evidence of another judge's determination regarding Argo's reliability. As a result, we conclude that the trial court did not err when it determined that there was sufficient probable cause for the search of Davis's vehicle.

{¶25} In sum, the record supports the trial court's finding that Sergeant Laughlin observed Davis commit a marked lanes violation that gave him reasonable suspicion to effectuate an investigatory stop. It also supports the trial court's determination that the investigatory stop was not impermissibly extended. And, finally, since the trial court's findings regarding Argo's alert are supported by competent credible evidence, it did not err in determining that there was probable cause for the search of Davis's vehicle. Thus, we cannot conclude that the trial court erred in denying Davis's motion to suppress the evidence obtained from the search of his vehicle.

{¶26} Accordingly, we overrule Davis's sole assignment of error.

III.

{¶27} Having overruled Davis's assignment of error, we affirm the judgment of the Lorain County Court of Common Pleas.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

13

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, P. J.
CONCURS.

MOORE, J.
CONCURRING.

{¶28} I concur in all aspects of the opinion. I feel compelled to note, however, that the officer's testimony, in support of reasonable suspicion of illegal activity, that he observed the driver sitting up straight with both hands on the steering wheel while traveling a few miles per hour under the maximum speed limit is ludicrous, and is of no evidentiary value whatsoever.

APPEARANCES:

RONALD L. FREY, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.