[Cite as *State v. Massey*, 2020-Ohio-1206.]

STATE OF OHIO        )                  IN THE COURT OF APPEALS
                      )ss:              NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                         C.A. No.      29312

    Appellee

    v.                              APPEAL FROM JUDGMENT
                                ENTERED IN THE
ANTHONY MASSEY               COURT OF COMMON PLEAS
                                COUNTY OF SUMMIT, OHIO
    Appellant                   CASE No.     CR 17 12 4379

DECISION AND JOURNAL ENTRY

Dated: March 31, 2020

CARR, Presiding Judge.

{¶1}     Appellant, Anthony Massey, appeals the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}     This matter arises out of a traffic stop that occurred just before midnight on the evening of December 1, 2017, in Akron, Ohio.  Massey, the driver of the vehicle, was ultimately placed under arrest during the stop.  The Summit County Grand Jury returned an indictment charging Massey with one count of operating a vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a) and one count of operating a vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(d).  Massey pleaded not guilty to the charges at arraignment.

{¶3}     Massey filed a motion to suppress raising a number of issues in relation to the stop, including whether there was reasonable suspicion to initiate the stop, whether there was reasonable

suspicion to administer field sobriety tests, as well as whether there was probable cause to place Massey under arrest. The matter proceeded to a hearing on the motion. Massey filed a post hearing memorandum addressing the application of the Supreme Court of Ohio's decision in *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, to the facts of the instant case. On October 26, 2018, the trial court issued a journal entry denying the motion to suppress.

{¶4} Massey ultimately pleaded no contest to the indictment and the trial court found him guilty. After ordering a presentence investigation report, the trial court imposed a 60-day jail sentence followed by a two-year term of community control.

{¶5} On appeal, Massey raises one assignment of error.

II.

### ASSIGNMENT OF ERROR

BY OVERRULING THE MOTION TO SUPPRESS, THE TRIAL COURT VIOLATED ANTHONY MASSEY'S FOURTH AMENDMENT RIGHTS PURSUANT TO THE UNITED STATES CONSTITUTION.

{¶6} In his sole assignment of error, Massey contends that the trial court erred in denying his motion to suppress. This Court disagrees.

{¶7} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124

Ohio App.3d 706 (4th Dist.1997). We emphasize, however, that "[t]his Court must only accept the trial court's findings of fact if they are supported by component, credible evidence." *State v. Hendrix*, 9th Dist. Summit Nos. 26648, 26649, 2013-Ohio-2430, ¶ 14, quoting *State v. Figueroa*, 9th Dist. Lorain No. 09CA009612, 2010-Ohio-189, ¶ 20.

{¶8} The Fourth Amendment to the United States Constitution and Article 1, Section 14 of the Ohio Constitution proscribe unreasonable searches and seizures. A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-810 (1996). A law enforcement official may conduct a traffic stop when there is a reasonable suspicion of criminal activity, such as a traffic violation. *State v. Campbell*, 9th Dist. Medina No. 05CA0032-M, 2005-Ohio-4361, ¶ 10-11. "[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid[.]" *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996); *State v. Woods*, 9th Dist. Summit No. 28838, 2018-Ohio-3352, ¶ 13.

### Background

{¶9} The trial court held a hearing on the motion to suppress on October 18, 2018. The only witness to testify at the hearing was Officer Matthew Boyer of the Ohio State High Patrol. A dashboard camera video of the stop was admitted into evidence. The trial court found Officer Boyer's testimony to be credible and made factual findings as follows.

{¶10} On the evening of December 1, 2018, Officer Boyer was on patrol on Arlington Road, a four-lane road with two northbound lanes. Officer Boyer explained that the northbound lanes were divided by a white hash line. While driving in the center northbound lane, Officer Boyer saw Massey driving a pickup truck in the same lane approximately 100 yards ahead. Officer Boyer testified that he observed Massey drive over the white hash line and into the outside

northbound lane, with the Massey's passenger side tires crossing one tire width over the line for one or two seconds. When Officer Boyer accelerated to get closer to Massey, he again observed Massey drive over the white hash line for approximately one or two seconds.

{¶11} Officer Boyer initiated a traffic stop of Massey's pickup truck. Upon making his way to the driver side window, Officer Boyer noticed that Massey smelled of alcohol. Officer Boyer further observed that Massey's eyes were "bloodshot" and "glassy." Massey denied that he had been drinking. Officer Boyer asked Massey to exit the vehicle. The odor of alcohol emanated from Massey's person after he excited the vehicle. Officer Boyer administered the Horizontal Gaze Nystagmus ("HGN") test where Massey demonstrated six out of six possible cues, indicating that he was above the legal limit. Officer Boyer also administered the Vertical Gaze Nystagmus ("VGN") test, which can indicate whether someone is under the influence of drugs or has a very high blood alcohol level. Massey demonstrated no cues during the VGN test. When Massey stated that he had suffered a back injury, Officer Boyer declined to administer the one-leg stand test and the walk-and-turn test as the results would have been invalid. Massey completed a portable breathalyzer test that suggested his blood alcohol level was above the legal limit. Officer Boyer subsequently placed Massey under arrest for OVI. Massey was transported to the police station where he completed a breathalyzer test revealing a blood alcohol level of .111.

## Discussion

{¶12} Massey's foremost argument on appeal is that law enforcement lacked reasonable suspicion to stop his vehicle. Massey suggests that the trial court's factual findings that he committed two marked lane violations ignored the evidence presented at the hearing. Massey points to the dashboard camera video introduced at the hearing in support of the proposition that

Officer Boyer's testimony regarding the traffic violations was not credible. Massey maintains that the video shows that "[a]t worst, [he] may have drifted for no more than 1 or 2 seconds."

{¶13} Officer Boyer testified that Massey "cross[ed] over" into another lane on two separate occasions. When the dashboard camera video was played at the hearing, Officer Boyer explained that the clarity of the video was somewhat poor because it was recorded on an older camera. Officer Boyer acknowledged at the hearing that the first alleged violation was not discernable on the video due to the quality of the video and the fact that he was 100 yards away when he observed the violation. Officer Boyer insisted, however, that his eyesight was better than what the camera depicted and that he observed Massey cross over the white hash lines with both passenger side tires. After observing the marked lanes violation, Officer Boyer accelerated so that his cruiser was much closer to Massey's truck.

{¶14} The video of the second alleged violation was presented by the State at the suppression hearing. A review of the video shows Massey drifting to the right before abruptly correcting and returning to the center of his lane. It appears from the video that the drifting occurred at a spot in the roadway where there was a temporary break in the white hash lines because of a side street that intersected from the right. The video shows that as Massey progressed northbound, he drifted to the right such that his right passenger tires would have at minimum been on top of the white hash lines had they continued, perhaps even crossing them. At the hearing, Officer Boyer explained that he used the white hash lines as a reference point and that "if there [had been] a solid white line, [Massey] would have been over that." Officer Boyer further testified that the first marked lanes violation was more pronounced than the second violation. Though Officer Boyer can be heard telling Massey that he was drifting "all over the road" during the

footage of the stop, Officer Boyer's testimony was simply that Massey committed two marked lanes violations and that he was driving at a rate of speed noticeably below the speed limit.

{¶15} Massey's contention that the record does not support the trial court's findings with respect to the traffic violations is without merit. A review of the dashboard camera video reveals that its quality was indeed somewhat poor. Given the distance between Officer Boyer's cruiser and Massey's truck, the video is non probative with respect to first alleged violation. Accordingly, the issue of whether to accept Officer Boyer's testimony regarding the first violation is entirely a matter of credibility. The trial court expressly found Officer Boyer's testimony to be credible. While Massey contends that Officer Boyer was overzealous on the evening of the incident, we remain mindful that "the trial court is in the best position to resolve credibility issues and this Court will not substitute our own judgment for that of the trial court regarding the weight given to [Officer Boyer's] testimony." *State v. Rogers*, 9th Dist. Wayne No. 16AP0014, 2017-Ohio-357, ¶ 11. With respect to the second alleged violation, Officer Boyer testified that Massey committed a lane violation that was minor and brief. Massey suggests on appeal that the "[w]orst case scenario" may have been "an extremely technical violation[.]" While the video does not depict an egregious lane violation, it also does not clearly contradict Officer Boyer's testimony that a violation occurred. Absent evidence to the contrary, the question of whether Officer Boyer observed a second violation is also a matter of credibility, and this Court will refrain from disturbing the trial court's credibility determination in that regard. *Id*. Under these circumstances, we cannot say that the trial court's findings were not supported by competent credible evidence.

{¶16} "A traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drive over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, syllabus. While Massey

contends that *Mays* is factually distinguishable because that case also involved slight weaving within the driver's lane, the Supreme Court ultimately concluded that the officer had reasonable and articulable suspicion to initiate a traffic stop for a marked lane violation after twice observing the driver cross over the white edge lines. *Id*. at ¶ 15-16; *State v. Davis*, 9th Dist. Lorain No. 14CA010639, 2015-Ohio-4218, ¶ 13 (concluding that law enforcement had reasonable suspicion to effectuate a traffic stop where the officer observed "three or four" instances where the vehicle crossed over the marked lane). Here, where Officer Boyer observed Massey commit two marked lane violations, there was reasonable suspicion to effectuate a stop of his pickup truck.

{¶17} While the gravamen of Massey's argument focuses on the basis for the traffic stop, he further contends that police lacked probable cause to place him under arrest for OVI. This argument is also without merit. After observing Massey commit multiple traffic violations, Officer Boyer initiated a stop of Massey's vehicle. Upon approaching the vehicle, Officer Boyer noticed the odor of alcohol emanating from Massey's person. Officer Boyer also observed that Massey's eyes were bloodshot and glassy. Based on these specific and articulable facts, Officer Boyer removed Massey from the vehicle to perform field sobriety tests. *See State v. Tomko*, 9th Dist. Summit No. 19253, 1999 WL 1037762, *3-4 (Nov. 3, 1999) (concluding that the defendant's bloodshot eyes and the smell of alcohol contributed to the officer's reasonable suspicion to continue the defendant's detention for purposes of administering field sobriety tests). Officer Boyer continued to smell alcohol on Massey's person after he had exited his pickup truck. On the HGN test, Massey demonstrated six out of six possible cues for impairment. Officer Boyer would have administered the one-leg stand and walk-and-turn tests but Massey was unable to perform them due to injury. These facts, when viewed in their totality, constituted probable cause to place Massey under arrest for OVI as the evidence was sufficient to cause a prudent person to believe

that Massey was driving while impaired. *See Akron v. Burch*, 9th Dist. Summit No. 29024, 2019-Ohio-121, ¶ 9.

{¶18} Massey's sole assignment of error is overruled.

III.

{¶19} Massey's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

BRIAN J. WILLIAMS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.