[Cite as *State v. Mote*, 2015-Ohio-3715.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 10-15-05

    v.

ROLAND A. MOTE,                 **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Mercer County Common Pleas Court
Trial Court No. 14-CRM-002

**Judgment Affirmed**

**Date of Decision:  September 14, 2015**

APPEARANCES:

    *Joseph A. Benavidez*  for Appellant

    *Matthew K. Fox*  and *Joshua A. Muhlenkamp* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Roland A. Mote ("Mote"), appeals the February 4, 2015 judgment entry of sentence of the Mercer County Court of Common Pleas. He argues that the trial court erred in denying his motion to suppress evidence. For the reasons that follow, we affirm.

{¶2} On January 23, 2014, the Mercer County Grand Jury indicted Mote on six counts in case No. 14-CRM-002: Count One of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a second-degree felony, and Counts Two, Three, Four, Five, and Six of breaking and entering in violation of R.C. 2911.13(A), fifth-degree felonies. (Doc. No. 6).[1]

{¶3} On January 29, 2014, Mote appeared for arraignment and entered pleas of not guilty. (Doc. No. 22).

{¶4} On March 4, 2014, Mote filed a motion to suppress evidence. (Doc. No. 28). Mote filed a memorandum in support of his motion to suppress on March 7, 2014. (Doc. No. 31). In support of his motion to suppress, Mote argued, in part, that he was unlawfully detained and arrested on January 4, 2014 following a traffic stop of a vehicle of which Mote was a passenger and that any evidence seized as part of his arrest should be excluded. (*Id.*); (May 1, 2014 Tr. at 6). On

---

[1] Case No. 14-CRM-002 was consolidated with case No. 14-CRM-024 on April 4, 2014. (*See* Doc. Nos. 42, 126). In case No. 14-CRM-024, the Mercer County Grand Jury indicted Mote on one count of breaking and entering in violation of R.C. 2911.13(A), a fifth-degree felony. (*See* Doc. No. 126). The trial court dismissed that count at the State's request on February 3, 2015. (Doc. No. 223).

March 21, 2014, the State filed a memorandum in opposition to Mote's motion to suppress. (Doc. No. 34).

{¶5} After a hearing on May 1, 2014, the trial court overruled Mote's motion to suppress on June 17, 2014. (Doc. No. 126).

{¶6} A jury trial was held on January 27-30, 2015. (Jan. 27, 2015 Tr. at 1). The jury found Mote guilty of Counts One, Four, Five, and Six. (Doc. Nos. 212, 216, 217, 218, 219). On February 3, 2015, the State filed a motion to dismiss Counts Two and Three of the indictment, which the trial court approved. (Doc. No. 223). On February 3, 2015, the trial court sentenced Mote to seven years in prison as to Count One, 12 months in prison as to Count Four, 12 months in prison as to Count Five, and 12 months in prison as to Count Six and ordered that Mote serve the terms consecutively for an aggregate sentence of 10 years. (Doc. No. 225). The trial court filed its sentencing entry on February 4, 2015. (*Id.*).

{¶7} Mote filed his notice of appeal on February 9, 2015. (Doc. No. 236). He raises one assignment of error for our review.

## Assignment of Error

**The Court Erred in Dismissing Appellant's Motion to Suppress.**

{¶8} In his sole assignment of error, Mote argues that the trial court erred in overruling his motion to suppress evidence. Specifically, Mote argues that he was unlawfully detained because he did "not reasonably believe he could end the

-3-

encounter or consider himself free to leave until so informed" since Patrick Miller ("Miller"), the driver of the vehicle of which Mote was a passenger, "testified that he did not feel he was free to leave the scene." (Appellant's Brief at 5). As such, he argues that "any search of [Mote] or the vehicle was invalid as a product of that seizure" because Mote did not voluntarily consent to any search. (*Id.*).

{¶9} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶10} At the May 1, 2014 suppression hearing, Chief Thomas Wale[2] ("Chief Wale") of the Celina Police Department testified that he conducted a traffic stop on January 4, 2014 of a vehicle of which Mote was a passenger. (May

---

[2] At the time of the traffic stop, Chief Wale was a sergeant with the Celina Police Department. (May 1, 2014 Tr. at 7). He was promoted to Chief on March 17, 2014. (*Id.*).

1, 2014 Tr. at 10-12). Chief Wale testified that he identified the driver of the vehicle as Miller and the passenger as Mote. (*Id.* at 12). After speaking with Miller regarding the purpose of the stop, Chief Wale testified that he returned to his cruiser and "called for [the Celina Police Department] K-9 unit who was working to come to [his] stop to do a walk around the car." (*Id.*). Chief Wale testified that he stopped Miller at 1:25:56 a.m. and that the K-9 unit arrived at 1:29:58 a.m. (*Id.* at 27). According to Chief Wale, Patrolman Dan Harting ("Patrolman Harting") "pulled up with his K-9 unit" and "approached [the stopped vehicle] from [Chief Wale's] passenger side while [Chief Wale] was writing a ticket," and "Patrolman [Nathan] Miller stopped shortly thereafter" to assist with the stop. (*Id.* at 14). Chief Wale testified that Patrolman Harting "walked on up to the car without talking to [Chief Wale] and walked his K-9 Ted around the car." (*Id.*). Chief Wale testified that Patrolman Harting "advised [him] that his K-9 had alerted or indicated to the presence of illegal substances in the vehicle or the scent thereof." (*Id.*). As a result, Chief Wale testified that he stopped writing the citation and "had the driver and the passenger step from the vehicle." (*Id.*). Chief Wale issued Miller the traffic citation after he was arrested. (*Id.* at 25).

{¶11} Chief Wale confirmed on cross-examination that he had not yet issued the traffic citation to Miller before Patrolman Harting and the K-9 arrived at the scene. (*Id.* at 31-32, 33).

**{¶12}** Next, Patrolman Harting testified that he responded to the January 4, 2014 traffic stop. (*Id.* at 42). He testified that, when he arrived at the scene, Chief Wale was sitting in his cruiser writing the citation. (*Id.* at 43). Because Chief Wale was writing the citation in his cruiser, Patrolman Harting testified that he walked his K-9 around Miller's vehicle and the K-9 "sat immediately"—the K-9's alert signal to the presence of illegal substances in the vehicle—when he walked the K-9 "around to the driver's side." (*Id.*). Patrolman Harting testified that he informed Chief Wale that the K-9 alerted to the presence of illegal substances in the vehicle and, at that point, Chief Wale stopped writing the traffic citation. (*Id.* at 43-44). According to Patrolman Harting, Chief Wale instructed Miller to step out of the vehicle and conducted a pat-down search of him. (*Id.* at 44). While Chief Wale was talking with Miller, Patrolman Harting testified that Patrolman Nathan Miller ("Patrolman Miller") arrived at the scene. (*Id.* at 45). After Patrolman Miller arrived, Patrolman Harting testified that he instructed Mote to exit the vehicle and requested Patrolman Miller to conduct a pat-down search of Mote. (*Id.* at 46). Patrolman Harting testified that, at that point, he searched the vehicle. (*Id.*).

**{¶13}** As part of Mote's defense, Miller testified on Mote's behalf. (*Id.* at 87). Miller testified that Patrolman Harting and the K-9 had not yet arrived at the scene when he was issued the traffic citation by Chief Wale and that Chief Wale

asked him to remain stopped until Patrolman Harting and the K-9 arrived. (*Id.* at 90). Miller further testified that, although he felt free to leave while he was waiting for Patrolman Harting and the K-9 to arrive, he chose not to leave since Chief Wale requested him to "remain still for a moment." (*Id.* at 91).

{¶14} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution generally prohibit warrantless searches and seizures, and any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12, citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961). "'Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment.'" *State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, ¶ 51, quoting *State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9, citing *Mapp* at 649 and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

{¶15} "At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the

warrant requirement, and that it meets Fourth Amendment standards of reasonableness." *Steinbrunner* at ¶ 12, citing *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), at paragraph two of the syllabus, *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978), and *Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999).

{¶16} "'A traffic stop constitutes a seizure and implicates the protections of the Fourth Amendment.'" *Gartrell* at ¶ 52, quoting *State v. Dillehay*, 3d Dist. Shelby No. 17-12-07, 2013-Ohio-327, ¶ 13, citing *State v. Johnson*, 3d Dist. Hancock No. 5-07-43, 2008-Ohio-1147, ¶ 16. "In conducting a stop of a motor vehicle for a traffic violation, an 'officer may detain an automobile for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped.'" *State v. Cahill*, 3d Dist. Shelby No. 17-01-19, 2002-Ohio-4459, ¶ 21, quoting *State v. Smith*, 117 Ohio App.3d 278, 285 (1st Dist.1996). *See also Gartrell* at ¶ 56 ("'Generally, when investigating a minor traffic violation, a police officer may only detain an individual "for the length of time necessary to check the driver's license, vehicle's registration, and the vehicle's license plate."'"), quoting *Dillehay* at ¶ 15, quoting *State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 14. "However, the duration of the stop 'is limited to "effectuate the purpose for which the initial stop was made."'" *Cahill* at ¶ 21, quoting *Smith* at 285, quoting *State v. Venham*, 96 Ohio App.3d 649, 655 (4th Dist.1994), citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574

(1975), *State v. Chatton*, 11 Ohio St.3d 59, 63 (1984), and *State v. Bevan*, 80 Ohio App.3d 126, 129 (11th Dist.1992). "'Thus, when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning.'" *Id.*, quoting *Smith* at 285, citing *State v. Keathley*, 55 Ohio App.3d 130 (2d Dist.1988). "However, the detention of a stopped driver may only continue beyond this time frame when 'additional facts are encountered that give rise to a reasonable, articulable suspicion [of criminal activity] beyond that which prompted the initial stop.'" *Id.*, quoting *Smith* at 285, citing *State v. Myers* (1990), 63 Ohio App.3d 765, 771 (2d Dist.1990) and *Venham* at 655. "'"When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver."'" *Gartrell* at ¶ 56, quoting *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240, ¶ 16, quoting *Brown*, 2004-Ohio-4058, at ¶ 14.

{¶17} "In addition, a lawfully detained vehicle may be subjected to a canine sniff of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity." *Id.* at ¶ 22, citing *State v. Rusnak*, 120 Ohio App.3d 24, 28 (6th Dist.1997). "Both Ohio courts and the Supreme Court of the United States have determined that 'the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution.'" *Id.*, quoting *Rusnak* at 28, and citing *United*

*States v. Place*, 462 U.S. 696, 103 S.Ct. 2637 (1983). "Thus, a canine sniff of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop." *Id.*

{¶18} "'The well-established automobile exception allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure." *Id.*, quoting *State v. Mills*, 62 Ohio St.3d 357, 367 (1992), citing *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975 (1970) and *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280 (1925). "'The mobility of automobiles often creates exigent circumstances, and is the traditional justification for this exception to the Fourth Amendment's warrant requirement.'" *Id.*, quoting *Mills* at 367, citing *California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066 (1985). *See also Gartrell* at ¶ 57 (""Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement.""), quoting *State v. Minyoung*, 3d Dist. Van Wert No. 15-11-11, 2012-Ohio-411, ¶ 25, quoting *State v. Moore*, 90 Ohio St.3d 47, 51 (2000). "Moreover, if a trained narcotics dog 'alerts to the odor of drugs from a lawfully detained vehicle, an officer has

probable cause to search the vehicle for contraband.'" *Cahill* at ¶ 22, quoting *State v. French*, 104 Ohio App.3d 740, 749 (12th Dist.1995).

{¶19} Mote does not contest the legality of the traffic stop. As such, we will not address it in this opinion. Instead, although it is unclear from his brief, it appears that Mote is challenging only the duration of the traffic stop and the search of Miller's vehicle and argues that he did not voluntarily consent to any search. Accordingly, we will address only those issues.

{¶20} The trial court's factual findings regarding the duration of the traffic stop, that the traffic stop was not yet completed at the time of the dog sniff, and that the K-9 alerted to the odor of illegal substances in the vehicle, are supported by competent credible evidence. Those facts support that the law enforcement officers had probable cause to search Miller's vehicle.

{¶21} Mote was not detained longer than the original purpose of the traffic stop. Chief Wale stopped Miller for committing a traffic violation at 1:25:56 a.m. and the narcotics K-9 arrived at the scene at 1:29:58 a.m. (May 1, 2014 Tr. at 27). According to Chief Wale, Patrolman Harting walked the K-9 up to Miller's vehicle at the time Patrolman Harting and the K-9 arrived at the scene, while Chief Wale was writing the traffic citation. (*Id.* at 14). Patrolman Harting's testimony corroborated that Chief Wale was writing Miller's traffic citation when he arrived at the scene and walked his K-9 around Miller's car. (*Id.* at 43). That Miller

testified that he had already received his traffic citation and Chief Wale told him to remain stopped for the K-9 to arrive does not negate the lawfulness of Mote's detention since the trial court was in the best position to evaluate the veracity of the testimony and found the law enforcement officers' testimony more credible than Miller's testimony. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Accordingly, Mote was not detained longer than the time period sufficient to issue Miller a ticket—that is, only four minutes elapsed from the time Chief Wale stopped Miller until Patrolman Harting and the K-9 arrived at the scene and immediately conducted a sniff of the vehicle's exterior while Chief Wale was writing Miller's traffic citation. *Compare State v. Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 23, 25, 30 (concluding that the traffic stop was not impermissibly extended for the purpose of a canine sniff since the law enforcement officer had not yet completed the stop and the stop lasted only eight minutes), citing *Illinois v. Caballes*, 543 U.S. 405, 410 125 S.Ct. 834 (2005) ("finding no constitutional violation where canine sniff test occurred less than 10 minutes after the initiation of the traffic stop, the defendant was placed in a police cruiser, the police officer had not yet issued a citation at the time of the alert on the defendant's vehicle") and *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 14 ("stating that there 'simply [was] no evidence to suggest that [the defendant]'s detention for the traffic violation was of sufficient length to make it

constitutionally dubious' where the dog alerted eight minutes and 56 seconds into the stop and neither the background check nor the traffic citation had been completed yet"). Thus, Mote's argument regarding whether Mote or Miller felt free to leave the scene is erroneous since the K-9 sniff occurred during their lawful detention.

**{¶22}** Therefore, we conclude that the law enforcement officers had probable cause to search Miller's vehicle. Patrolman Harting testified that his K-9 alerted to the presence or scent of illegal substances in the vehicle. (May 1, 2014 Tr. at 14). Because the K-9 altered to the odor of drugs from a lawfully detained vehicle, the law enforcement officers had probable cause to search Miller's vehicle for contraband. *Cahill*, 2002-Ohio-4459, at ¶ 22. As such, also meritless is Mote's argument regarding whether he voluntarily consented to the search. *See State v. Payne*, 12th Dist. Butler No. CA98-12-244, 1999 WL 441776, *2 (June 1, 1999) ("Because we find that probable cause for the search was established, the consent determination is not dispositive."). *See also Schneckloth*, 412 U.S. at 228 (concluding that a valid consent to a search obviates the need for a warrant or probable cause to conduct a search); *State v. Akron Airport Post No. 8975, Veterans of Foreign Wars of U.S.*, 19 Ohio St.3d 49, 51 (1989) (recognizing the six exceptions to a search warrant as "(a) A search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine;

(d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine").

**{¶23}** Therefore, the trial court did not err in overruling Mote's motion to suppress evidence.

**{¶24}** Mote's assignment of error is overruled.

**{¶25}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J. and SHAW, J., concur.**

**/jlr**