[Cite as *State v. Stevens*, 2016-Ohio-5017.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 15CA30 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| LARRY STEVENS, JR., | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 07/12/16** |

_____
APPEARANCES:

Chase A. Mallory, Luftman, Heck & Associates LLP, Columbus, Ohio, for Appellant.

Kevin A. Rings, Washington County Prosecuting Attorney, and Harrison L. Crumrine, Assistant Prosecuting Attorney, Marietta, Ohio, for Appellee.
_____

McFarland, J.

{¶ 1} Larry Stevens, Jr. appeals his conviction for possession of drugs in the Washington County Court of Common Pleas, which stemmed from a traffic stop where marijuana was seized from the trunk of his vehicle. Specifically, Appellant appeals the trial court's denial of his motion to suppress evidence, contending that the trial court erred in overruling his motion to suppress. Because we find the trial court properly denied Appellant's motion to suppress, we find no error and Appellant's sole

assignment of error is overruled. Accordingly, the judgment of the trial court is affirmed.

## FACTS

{¶ 2} Appellant, Larry Stevens, Jr., was indicted on one count of possession of drugs (marijuana), a fifth degree felony in violation of R.C. 2925.11(A) & (C)(3)(c) on December 18, 2014. This indictment stemmed from a stop of Appellant's vehicle for a window tint violation, which ultimately resulted in law enforcement locating marijuana in Appellant's trunk. Appellant initially pled not guilty to the charge and filed a motion to suppress all of the evidence obtained by what he characterized as an unconstitutional detention and/or arrest.

{¶ 3} A suppression hearing was held on May 18, 2015, at which Trooper Scott Bayless and Trooper Steven Roe testified. Their testimony will be discussed more fully below. Additionally, Appellant stipulated to the authenticity of the dash cam video from Trooper Bayless' cruiser, and that video was played during the hearing and admitted into evidence as an exhibit. After hearing the testimony presented at the hearing and after considering the written closing arguments of the parties, the trial court issued a decision denying Appellant's motion to suppress.

**{¶ 4}** In the trial court's journal entry which denied the motion, the trial court found the following facts with respect to this matter:

"Defendant was southbound on I-77 in Washington County September 26, 2014 at approximately 3:05 p.m. Bayless was stationary at mile marker 17. It should be noted that Bayless was a K-9 unit. Bayless observed Defendant's vehicle noting that the window tint appeared excessive. Defendant was stopped without incident. Bayless approached the passenger window, informed Defendant why he had been stopped, noted that Defendant was overly nervous, fumbled obtaining license, registration and insurance info, and kept rearranging items that were already in perfect order in the auto. While Bayless was checking Defendant's documents he ordered a criminal records check. Roe arrived within six (6) minutes with a window tint meter confirming that the window was only allowing 26% light transmission, well below the 50% allowed on Ohio licensed vehicles. Roe testified that Defendant was shaking and trembling exhibiting extreme nervousness considering the stop was a tinted window violation.

Bayless received information that Defendant had a prior drug related conviction in Michigan from 2009. Based on Defendant's extreme nervousness and the prior conviction, Bayless had Defendant step from his vehicle to do a K-9 check. Bayless patted Defendant down testifying that Defendant was still shaking and appeared even more nervous. Bayless gave Defendant his Miranda Rights and upon inquiry and without having to remove his K-9, Defendant admitted that he had marijuana in the vehicle and told the officers where it was located. The marijuana was located and Defendant placed under arrest."

Based upon these facts, the trial court found that Trooper Bayless had probable cause for the initial stop, and reasonable articulable suspicion of criminal activity thereafter based upon Appellant's extreme nervousness to the point of shaking combined with his prior drug-related conviction.

{¶ 5} Appellant subsequently changed his plea, and entered a no contest plea to the charge contained in the indictment. The trial court found Appellant guilty and sentenced him by order dated August 17, 2015. It is from this final order that Appellant now brings his timely appeal, setting forth one assignment of error for our review.

ASSIGNMENT OF ERROR

"I.      THE TRIAL COURT ERRED IN OVERRULING THE
         DEFENDANT'S MOTION TO SUPPRESS EVIDENCE."

STANDARD OF REVIEW

{¶ 6}  In his sole assignment of error, Appellant contends that the trial

court erred in overruling his motion to suppress evidence.  Appellate review

of a motion to suppress presents a mixed question of law and fact. *State v.*

*Gurley*, 4th Dist. Scioto No. 14CA3646, 2015-Ohio-5361, ¶ 16; citing *State*

*v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100.  At

a suppression hearing, the trial court acts as the trier of fact and is in the best

position to resolve factual questions and evaluate witness credibility. *Id.*;

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

Thus, when reviewing a ruling on a motion to suppress, we defer to the trial

court's findings of fact if they are supported by competent, credible

evidence. *Gurley* at ¶ 16; citing *State v. Landrum*, 137 Ohio App.3d 718,

722, 739 N.E.2d 1159 (4th Dist.2000).  However, "[a]ccepting those facts as

true, we must independently determine whether the trial court reached the

correct legal conclusion in analyzing the facts of the case." *Id.*; citing

*Roberts* at ¶ 100.

LAW AND ANALYSIS

{¶ 7} " 'The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures.' " *State v. Shrewsbury*, 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, ¶ 14; quoting *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion of the evidence obtained from the unreasonable search and seizure at trial." *Id*.; citing *Emerson* at ¶ 15; *see also State v. Lemaster*, 4th Dist. Ross No. 11CA3236, 2012-Ohio-971, ¶ 8 ("If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial.").

{¶ 8} "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008-Ohio-6691, ¶ 14; *see also State v. Eatmon*, 4th Dist. Scioto No. 12CA3498, 2013-Ohio-4812, ¶ 13 (quoting *Lewis* ). "To be constitutionally valid, the detention must be reasonable under the circumstances." *Lewis* at ¶ 14. "While probable cause 'is certainly a complete justification for a traffic stop,' it is not required." *Eatmon* at ¶ 13; quoting *State v. Mays*, 119 Ohio

St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.  "So long as 'an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.' " *Id*.; quoting *Mays* at ¶ 8.  "Reasonable and articulable suspicion is a lower standard than probable cause." *Id*.; citing *Mays* at ¶ 23.

{¶ 9}  A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws. *State v. Debrossard*, 4th Dist. Ross. No. 13CA3395, 2015-Ohio-1054, ¶ 13; citing *State v. Guseman*, 4th Dist. Athens No. 08CA15, 2009-Ohio-952, ¶ 20; citing *State v. Bowie*, 4th Dist. Washington No. 01CA34, 2002-Ohio-3553, ¶ 8, 12, and 16; citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996). *See also Dayton v. Erickson*, 76 Ohio St.3d 3, 655 N.E.2d 1091 (1996), syllabus.  Further, the Supreme Court of Ohio has clearly stated: "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop[.]" *Dayton* at paragraph one of the syllabus.

INITIAL STOP

{¶ 10}  Here, Appellant's vehicle was initially stopped by Trooper Bayless, who was a canine handler, for excessive window tint.  The record indicates that Trooper Roe stopped to assist Trooper Bayless and checked the window tint of Appellant's vehicle at Trooper Bayless' request, while Bayless was waiting in his cruiser for a response from dispatch.[1]  The record indicates that Trooper Roe checked Appellant's window tint and determined that it only permitted 26% light transmittance.  Trooper Roe advised Appellant of the result of the test and that 50% was the required light transmittance.  Importantly, Appellant does not argue that the stop of his vehicle was unlawful.  Thus, there is no issue regarding whether Trooper Bayless had a reasonable and articulable suspicion and probable cause to stop Appellant's vehicle.  As such, we turn our attention to whether the duration of the stop was unlawful.

CANINE SNIFF AND DURATION OF STOP

{¶ 11}  Appellant contends that Troopers Bayless and Roe had completed all the necessary tasks to effectuate the purpose of the initial stop, and then prolonged the stop to pursue a drug investigation without reasonable suspicion to do so.  However, based upon our review of the

---

[1] The record indicates Trooper Bayless had a newly issued cruiser which was not equipped with a window tint meter.  Thus, he asked Trooper Roe to assist him in that regard.

record and the following case law, and despite defense counsel's artful questioning of Trooper Bayless at the suppression hearing, we conclude that the purpose of the initial stop had not been concluded at the time a decision was made to deploy the canine. Further, assuming arguendo that the mission and purpose of the initial stop had been concluded at the time it was decided that the canine should be deployed, we believe, under these facts, the troopers had reasonable suspicion to prolong the stop for further investigation.

{¶ 12} The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Debrossard* at ¶ 16; quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319 (1983); *see also State v. Gonyou*, 108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th Dist.1995) and *State v. Hughes*, 4th Dist. Ross No. 97CA2309, 1998 WL 363850. The rule set forth in *Royer* is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime. *See generally Gonyou; Sagamore Hills v. Eller*, 9th Dist. Summit No. 18495, 1997 WL 760693 (Nov. 5, 1997); *see also Fairborn v. Orrick*, 49 Ohio App.3d 94, 95, 550 N.E.2d 488 (2nd Dist.1988), (stating that "the mere fact that a police officer has an articulable and reasonable suspicion sufficient to

stop a motor vehicle does not give that police officer 'open season' to investigate matters not reasonably within the scope of his suspicion'").

{¶ 13} Generally, "[w]hen a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates." *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 36; citing *State v. Carlson*, 102 Ohio App.3d 585, 598, 657 N.E.2d 591 (9th Dist.1995); *see also Rodriguez v. United States*, -- U.S. --, 135 S.Ct. 1609, 1615 (2015) (ordinary inquiries incident to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance"). "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Id.*; citing *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992) (fifteen-minute detention was reasonable); *United States v. Sharp*, 470 U.S. 675, 105 S.Ct. 1568 (1985), (twenty-minute detention was reasonable).

{¶ 14} A lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. *State v. Rusnak*, 120 Ohio App.3d 24, 28, 696 N.E.2d 633 (6th Dist.1997). Both Ohio courts and the United States Supreme Court have determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the Constitution." *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004-Ohio-7280, ¶ 24; *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637 (1983). Thus, a canine check of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop. *Jones*, at ¶ 24.

{¶ 15} During a continued, lawful detention of a vehicle, as discussed above, officers are not required to have a reasonable, articulable suspicion of criminal activity in order to call in a canine unit to conduct a canine sniff on the vehicle. *See, e.g., State v. Feerer*, 12th Dist. Warren No. CA2008-05-064, 2008-Ohio-6766, ¶ 10. "Because the 'exterior sniff by a trained narcotics dog is not a search within the meaning of the Fourth Amendment to the Constitution,' a canine sniff of a vehicle may be conducted even without the presence of such reasonable, articulable suspicion of criminal activity so long as it is conducted during the time period necessary to

effectuate the original purpose of the stop." *Id. See also United States v. Place*, *supra.* "A drug sniffing dog used to detect the presence of illegal drugs in a lawfully detained vehicle does not violate a reasonable expectation of privacy and is not a search under the Ohio Constitution." *State v. Waldroup*, 100 Ohio App.3d 508, 514, 654 N.E.2d 390 (12th Dist.1995).

{¶ 16} Further, "[a]n officer may expand the scope of the stop and may continue to detain the vehicle without running afoul of the Fourth Amendment if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot." *State v. Rose*, 4th Dist. Highland No. 06CA5, 2006-Ohio-5292, ¶ 17; citing *State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997). The *Robinette* court explained, at paragraph one of the syllabus:

> "When a police officer's objective justification to continue
>
> detention of a person * * * is not related to the purpose of the
>
> original stop, and when that continued detention is not based on
>
> any articulable facts giving rise to a suspicion of some illegal
>
> activity justifying an extension of the detention, the continued
>
> detention to conduct a search constitutes an illegal seizure."

**{¶ 17}** Conversely, "if a law enforcement officer, during a valid investigative stop, ascertains 'reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual.' " *Rose* at ¶ 17; quoting *Robinette* at 241.

**{¶ 18}** However, the United States Supreme Court in *Rodriguez v. United States, supra,* recently held that while a police officer "may conduct certain unrelated checks during an otherwise lawful traffic stop * * * he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 1615. Accordingly, the Court concluded that police officers may not extend *an otherwise-completed traffic stop*, absent reasonable suspicion, in order to conduct a dog sniff. *Id.* at 1614-1617. (Emphasis added).

**{¶ 19}** Finally, "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci*, 11th Dist. Lake No. 2001-L-205, 2003-Ohio-702, ¶ 30. The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *State v. Ulmer*, 4th Dist. Scioto No. 09CA3283, 2010-Ohio-695,

¶ 23; *United States v. Arvizu*, 534 U.S. at 273.  Thus, when an appellate court reviews a police officer's reasonable suspicion determination, "the court must give 'due weight' to factual inferences drawn by resident judges and local law enforcement officers." *Ulmer* at ¶ 23; *Ornelas v. United States*, 517 U.S. at 699.

{¶ 20}  As indicated above, based upon our review of the record and the foregoing case law, and despite defense counsel's artful questioning of Trooper Bayless at the suppression hearing, we conclude that the purpose of the initial stop had not been concluded at the time Trooper Bayless decided to conduct a canine sniff of the vehicle.  Initially, it should be noted that Trooper Bayless, the trooper who initiated the traffic stop, is a canine handler and had his canine in the vehicle with him.  Appellant's vehicle was stopped at approximately 3:06 p.m.  Trooper Bayless obtained Appellant's information and returned to his cruiser to check the information at 3:08 p.m.  Trooper Bayless noted Appellant's extreme nervousness and rearranging of items in the dash at that time.

{¶ 21}  Trooper Roe then arrived and Trooper Bayless requested that he check the window tint at 3:09 p.m.  Trooper Roe returned to Trooper Bayless' cruiser at 3:12 p.m. and reported the window tint violation, Appellant's nervousness and hand wringing, very strong air freshener, and

also conveyed that he encountered what he thought was a slight hint of "weed," but commented the air freshener was "so strong." At 3:13 p.m. dispatch reported to Trooper Bayless that Appellant had a prior drug conviction. At that time, and before Trooper Bayless had even begun writing a citation or written warning to Appellant, Trooper Bayless decided to conduct a canine sniff. Thus, Trooper Bayless decided to conduct the sniff only seven minutes after Appellant was initially stopped, and before he had given Appellant a citation or warning.[2] Moreover, Trooper Bayless was a canine handler and had his canine in his cruiser. Thus, there would have been no delay in waiting for a canine unit to arrive.

{¶ 22} The testimony during the suppression hearing indicated that the troopers removed Appellant from the vehicle, per their usual procedure, to prepare to conduct the canine sniff of the vehicle, and conducted a pat-down for weapons with Appellant's consent.[3] Appellant was also Mirandized at that time. Trooper Bayless then inquired whether there would be anything of interest to the canine in the vehicle to which Appellant responded in the affirmative, stating there was marijuana in the vehicle. Appellant made this statement at 3:17 p.m., just eleven minutes after the

---

[2] Trooper Bayless testified that he had intended to only issue a warning.

[3] Trooper Bayless testified that it was his customary practice to remove drivers from their vehicles prior to conducting a canine sniff, because of safety concerns. He further explained that his canine was a "handler protection dog" which could possibly strike if he saw movement inside the vehicle while performing a sniff.

initial stop.  Based upon Appellant's statement, the troopers searched the vehicle without ever deploying the canine and eventually located marijuana in Appellant's trunk.

{¶ 23}  Appellant contends that "[i]n the present case, the drug investigation could have been completed within the bounds of the Fourth Amendment."  Appellant explains, for example, that in *Caballes*, "two different officers were present." [4] Appellant goes on to discuss that in *Caballes* "[w]hile one was diligently pursuing the purpose of the initial stop, the other officer conducted a K9 sniff."  Appellant argues that "[c]onducting the stop in this fashion did not add time to the stop."  Appellant then goes on to argue that here, the troopers "were finished with their tasks related to the purpose of the stop and then subsequently began their drug investigation."

{¶ 24}  We initially address Appellant's argument that the stop could have been completed without violating the Fourth Amendment if one officer had been conducting the canine sniff while another officer was pursuing the purpose of the initial stop.  First, and importantly, Trooper Bayless was the stopping officer and also the canine handler.  Thus, he could not complete two tasks at the same time.  Although Trooper Roe arrived to assist with the window tint investigation, he was not a canine handler and could not

---

[4] *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834 (2005).

conduct the canine sniff while Trooper Bayless continued to communicate with dispatch to verify Appellant's information. Second, the record indicates that the stop was conducted and investigated in a diligent manner by Trooper Bayless. He methodically checked Appellant's information, contacted dispatch, requested assistance from Trooper Roe, followed up with Trooper Roe and dispatch, and then determined to walk his dog around the vehicle all within eight minutes of the initial stop, and before issuing a citation or warning to Appellant. This Court cannot see how Trooper Bayless, who had the responsibility to investigate the initial reason for the stop and also was the canine handler, could have conducted the stop in a more efficient manner. Further, if a canine handler can never deploy his canine without it being considered an impermissible "prolonging" of the stop, then it is unclear when a canine handler can ever be the officer to initiate a stop and also utilize his canine, absent reasonable suspicion to do so. Thus, we cannot conclude that the facts presently before us run afoul of the Fourth Amendment or *Rodriguez, supra,* which essentially held that police officers may not extend *an otherwise-completed traffic stop*, absent reasonable suspicion, in order to conduct a dog sniff.

{¶ 25} We next address Appellant's argument that the troopers "were finished with their tasks related to the purpose of the stop and then

subsequently began their drug investigation."  Appellant relies on the following exchange that occurred with Trooper Bayless during the suppression hearing to support his argument:

"Q.   * * * So then you would agree with me then, that at that point, when you decided that you were going to pull him out of the vehicle, you stopped pursuing the initial stop?

A.     Right.

Q.     Okay.  And then this became a drug investigation?

A.     Correct."

There is, however, a problem with Appellant's argument as well as this line of questioning.  Contrary to Appellant's argument, the record, and specifically dash cam video, reveals that the stop was not "otherwise-completed" at the time the decision was made to deploy the canine, as no warning had been issued yet.  Although Trooper Bayless testified that he had made up his mind to issue a warning, that warning had not been issued either in verbal or written form at the time he decided to conduct the canine sniff. Thus, the initial stop had not been concluded.

{¶ 26}  In *Rodriguez*, the officer, who had a canine present with him at the time of the stop, had completed the traffic stop, including issuing a written warning for the traffic violation before deciding to conduct a canine

sniff of the vehicle. Because the driver refused to allow the sniff, the officer detained the driver until back-up arrived and then conducted the sniff. This scenario is different from the scenario presently before us where Trooper Bayless had not issued a citation or warning yet. As set forth above, police officers may not extend *an otherwise-completed traffic stop*, absent reasonable suspicion, in order to conduct a dog sniff. *Id*. at 1614-1617. Once again, this stop was not "otherwise-completed."

**{¶ 27}** Yet, the *Rodriguez* court went on to state that the critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff prolongs, or adds time to, the stop. *Rodriguez* at 1616. Ohio Courts have held that Rodriguez has no bearing when the canine sniff is conducted during the time period necessary to effectuate the original purpose of the traffic stop and prior to completion of a written citation. *State v. Reece*, 1st Dist. Hamilton No. C-140635, 2015-Ohio-3638, ¶ 25 (sniff conducted prior to issuance of citation); *State v. Davis*, 9th Dist. Lorain No. 14CA010639, 2015-Ohio-4218, ¶ 16 (sniff conducted prior to background check completed or traffic citation issued); *State v. Mote*, 3rd Dist. Mercer No. 10-15-05, 2015-Ohio-3715, ¶ 21 (driver not detained longer than the time period sufficient to issue a ticket). Further, and as set forth above, such a strict application of *Rodriguez* would prevent

an officer who was both the stopping/investigating officer and also a canine handler from ever deploying his canine without it being considered an impermissible "prolonging" of the stop, absent reasonable suspicion to do so.

{¶ 28} Further, even if the mission and purpose of the initial stop had been concluded at the time Trooper Bayless decided to conduct a canine sniff of Appellant's vehicle, we believe, under these facts, the troopers had reasonable suspicion to prolong the stop and expand the scope of the investigation. We reach this conclusion in light of the information contained in the record, primarily the dash cam video which was entered into evidence and was before the trial court for review and consideration. Taking the contents of the video and the troopers' testimony together, we find the troopers possessed reasonable suspicion to expand the investigation and deploy the canine. Specifically, we believe the following factors provided the troopers with reasonable suspicion to prolong the detention and expand the scope of the investigation: 1) Appellant's extreme nervousness, which included shaking hands, trembling, hand wringing, and repeated rearranging of items in the dash that did not need rearranging; 2) the report from dispatch that Appellant had a prior criminal history that included a drug conviction; 3) statements heard on the dash cam video by Trooper Roe that

he encountered a slight odor of marijuana that was overpowered by very strong air freshener as he was checking Appellant's passenger side window; and 4) the fact that Appellant's windows had excessive window tint, which would have made it difficult to see inside the vehicle.

{¶ 29} Despite Appellant's argument that nervousness is to be expected during a stop of a vehicle and that that factor, in and of itself, indicates essentially nothing, we note that nervousness is commonly one of the factors cited when determining whether reasonable suspicion exists to expand the investigation during a traffic stop. *State v. Robinson*, 4th Dist. Lawrence No. 14CA24, 2016-Ohio-905; *State v. Shook*, 4th Dist. Pike No. 13CA841, 2014-Ohio-3403. And, the evidence before us indicates Appellant seemed to be extremely nervous, especially, as Trooper Bayless indicated, for only a window tint violation stop. Appellant's nervous behavior included shaking hands, trembling, hand wringing and repeated rearranging of items in the vehicle, which according to Trooper Bayless did not need rearranging, as the vehicle was neat as a pin. Appellant's behavior continued after he was informed the officers were simply investigating whether his window tint was too dark.

{¶ 30} With regard to Appellant's argument that his history of a prior drug conviction is not a factor to be considered when determining whether

reasonable suspicion exists, we note this Court has previously affirmed reliance on such a factor in determining whether reasonable suspicion exists. *State v. Shook, supra*, ¶ 5 (LEADS criminal history check revealed history of drug and weapons charges).  Further, unusually strong air freshener is often considered a red flag. *State v. Eggleston*, 11th Dist. Trumbull No. 2014-T-0068, 2015-Ohio-958 (reversing conviction but also noting the presence of air freshener is an "indicia of potential drug activity.").  Additionally, the Supreme Court of Ohio has considered air freshener/deodorizer and tinted windows both to be factors leading to reasonable suspicion of criminal activity during a traffic stop. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 19.  Further, as noted in *Batchili*, "[t]he "reasonable and articulable suspicion" analysis is based on the collection of factors, not on the individual factors themselves." *Id.* at ¶ 19.

{¶ 31}  Thus, even though there may be innocent explanations for each of the factors separately, taken as a whole, we believe Troopers Bayless and Roe could reasonably conclude they had reasonable suspicion of criminal activity.  Trooper Bayless testified to this belief during the suppression hearing.  As indicated above, the totality of the circumstances approach "allows officers to draw on their own experience and specialized

training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *State v. Ulmer, supra,* at ¶ 23; *United States v. Arvizu, supra,* at 273. Thus, when an appellate court reviews a police officer's reasonable suspicion determination, "the court must give 'due weight' to factual inferences drawn by resident judges and local law enforcement officers." *Ulmer, supra,* at ¶ 23; *Ornelas v. United States, supra,* at 699.

{¶ 32} Thus, in summary, we conclude that the initial purpose or mission of the stop had not been concluded at the time the decision was made to deploy the canine for a sniff of the vehicle, and as such, no reasonable suspicion was needed to conduct the sniff. Further, even if the initial mission was concluded despite the fact that Trooper Bayless had not yet issued Appellant a warning or citation, looking at the collection of factors as a whole that the troopers were confronted with during the stop and considering the totality of the circumstances, we conclude Troopers Bayless and Roe had reasonable suspicion to expand the scope of their investigation and any prolonging of the stop that occurred in order to attempt to conduct the canine sniff, which ultimately was not needed, was justified.

{¶ 33} Moreover, "[r]ecognizing that 'detention, not questioning, is the evil' at issue, * * * so long as the traffic stop is valid, 'any questioning

which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention.' " *State v. Chagaris*, 107 Ohio App.3d 551, 556-557, 669 N.E.2d 92 (9th Dist.1995); quoting *State v. Wright*, 9th Dist. Medina No. 2371-M, 1995 WL 404964, *3-4 (June 28, 1995).  Thus, Appellant's statement made pursuant to Trooper Bayless' questioning during the valid stop and detention, which was made only after Appellant had been read his Miranda Rights, was valid and further provided the troopers with probable cause to search Appellant's vehicle.  As such, we conclude that the trial court did not err in denying Appellant's motion to suppress.  Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

Harsha, J., concurring:

{¶ 34} I concur in the judgment overruling Stevens's assignment of error. Nevertheless, I disagree with the conclusion of the majority that the state troopers were not finished with their traffic stop at the time that Trooper Bayless asked Stevens to exit the vehicle to conduct a K-9 search and he Mirandized him. Trooper Bayless himself admitted that at that point, they had stopped pursuing the initial stop for the tinted-windows offense and had commenced a drug investigation.

{¶ 35} The principal opinion initially focuses upon the duration of the initial stop as the means for limiting the scope of the Fourth Amendment intrusion. In my view the duration of the initial stop, although relevant to the Fourth Amendment inquiry, is not determinative of the issue here. Rather, as the principal opinion ultimately concludes, our outcome is determined by whether the troopers had observed additional articulable facts justifying an expansion of the scope of the stop. "An officer may expand the scope of the stop and may continue to detain the vehicle without running afoul of the Fourth Amendment if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot." *State v. Rose*, 4th Dist. Highland No. 06CA5, 2006–Ohio–5292, ¶ 17, *citing*

*State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997); *see also*

*State v. Davis*, 4th Dist. Athens No. 15CA26, 2016-Ohio-3539, ¶ 27.

{¶ 36} One of the facts the trooper relied upon in expanding the scope

of their stop was their knowledge of Stevens's prior drug conviction. It is

important to note that a person's past criminal history, standing alone, does

not provide the required level of suspicion to justify expanding the scope of

the initial intrusion from a traffic stop into a criminal investigation. *See*

Katz, *Ohio Arrest, Search and Seizure*, Section 18:11 (2016 Ed.), citing

*State v. Whitman*, 184 Ohio App.3d 733, 2009-Ohio-5647, 922 N.E.2d 293

(5th Dist.), quoting *United States v. Sandoval,* 29 F.3d 537, 542 (10th

Cir.1994) (" 'knowledge of a person's prior criminal involvement (to say

nothing of a mere arrest) is alone insufficient to give rise to the requisite

reasonable suspicion' to justify a shift in investigatory intrusion from the

traffic stop to a firearms or drugs investigation"). But it is a factor that may

be considered in the analysis of the totality of the circumstances.

{¶ 37} Based upon the totality of the circumstances, the trial court did

not err in denying the suppression motion because the expansion of the

scope of Stevens's detention was justified by additional facts—his extreme

nervousness, prior drug conviction, the strong odor of air freshener, and the

hint of the odor of marijuana masked by the air freshener—that gave rise to

a reasonable suspicion that drug-related criminal activity was afoot.

Therefore, I concur in the judgment affirming the trial court's judgment.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment and Opinion.
Harsha, J.:   Concurs with Concurring Opinion.

For the Court,

BY:    _____
Matthew W. McFarland, Judge

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**